IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HO KEUNG TSE,<br><br>    Plaintiff,<br> v.<br>GOOGLE, INC., *et al.*,<br><br>    Defendants.<br>_____ / | No. C 13-0194 SI<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT** |
| HO KEUNG TSE,<br><br>    Plaintiff,<br> v.<br>BLOCKBUSTER, L.L.C.,<br><br>    Defendant.<br>_____ / | No. C 13-1204 SI |

  Defendants in these related patent infringement actions have filed a motion for summary judgment of invalidity based on a lack of written description under 35 U.S.C. § 112. *Pro se* plaintiff has filed an opposition, to which defendants have replied. The Court heard argument on the motion on September 6, 2013. Having considered the parties' positions, and for good cause shown, the Court GRANTS defendants' motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

  Plaintiff filed Application No. 08/587,448 ("'448 application" or "parent application") on December 1, 1995. Plaintiff subsequently filed Application No. 09/112,276 ("'276 application" or "CIP application") on July 9, 1998, claiming priority as a continuation-in-part to the '448 application. Plaintiff eventually discontinued his prosecution of the parent '448 application. However, on December 16, 2003, United States Patent 6,665,797 B1 ('797 Patent) issued based on the '276 application. The '797 Patent is the only patent at issue in these two lawsuits.

The '797 Patent teaches a method for protecting software against unauthorized use. Skaff Decl., Ex. A, '797 Patent, at 2:33-38. Whereas prior authentication software methods required use of hardware comprising decryption keys, the '797 Patent's method does not require external hardware. *Id.* at 1:14-29. Instead, it teaches an authentication method involving software that performs authentication via a central program, without any external decryption hardware. *Id.* The central program includes three sub-programs: (1) a sub-program for providing encrypted identity information (the "EI sub-program"); (2) a sub-program for authenticating a computer (the "AC sub-program"); and (3) a sub-program for authorizing the access or use of protected software (the "AS sub-program"). *Id.* at 2:40-46. The central program verifies the user's identity information on the computer by using the EI sub-program. It then optionally authenticates a computer as being an authorized computer by using the AC sub-program. *Id.* at 2:33-5:30. Depending on the result of these checks, the AS sub-program permits access or use of the protected software by either sending an encrypted command to the software to permit it to run or by decrypting the software to allow access. *Id*.

The '797 Patent's disclosure teaches that the EI sub-program can be used to obtain goods and services on a user's account "for payment therefor [sic] involved." '797 Patent, 1:46-51. Because the central program containing the AS sub-program (required for accessing protected software) also contains the EI sub-program that can be used to make purchases on the user's account, the user is purportedly deterred from providing unauthorized access to the central program to others.

On April 2, 2001, plaintiff filed an amendment to the '276 application. *See* Skaff Decl. Ex. C. In particular, plaintiff responded to the patent examiner's prior art objection by adding a limitation that access to the protected software be provided without a payment or charge. Whereas the prior art required a billing operation to take place, plaintiff contended that his method required no such operation. In December 2003, the '797 Patent issued and the claims in dispute in this lawsuit – claims 1-5, 13, 16, 17, 20, and 23-26 – all contain some variation of the "no-charge" amendment.

In 2005, plaintiff filed an action for infringement of the '797 Patent against Apple Computer, Inc., and others, in the United States District Court for the District of Maryland. That action was transferred to this district. *See Ho Keung Tse v. Apple Inc.*, Case No. 4:06-cv-6573-SBA (N.D. Cal.). On July 24, 2007, the defendants in that action initiated an *ex parte* reexamination proceeding of the

'797 Patent. During the reexamination process, the patent examiner rejected all but one of the claims under reexamination as being invalid over the prior art. The examiner found, as part of a determination of the applicable priority date with respect to several claims, that there was no support in the original 1995 parent application for the claim limitation requiring that access to the protected software be provided without an e-commerce transaction taking place (the "no-charge" limitation). As such, the examiner found that the claims with the no-charge limitation were not entitled to priority back to the 1995 '448 application.

Plaintiff appealed the examiner's findings to the Board of Patent Appeals ("BPAI"). The BPAI confirmed the examiner's finding of a lack of written description support in the parent application for the no-charge limitation and, as such, upheld the finding of invalidity for those claims on the basis of prior art. *See* Skaff Decl. Ex. F (BPAI opinion, 1/11/2011). Plaintiff requested reconsideration and also requested a rehearing with an expanded BPAI panel. The BPAI affirmed its earlier decision and denied the rehearing with an expanded panel. *See* Skaff Decl. Ex. G. (BPAI opinion, 5/26/2011). After the appeal, plaintiff further amended claim language and renumbered several claims. A reexamination certificate reflecting the surviving claims was issued in August of 2012. *See* Docket No. 36.

On May 30, 2012, plaintiff filed two separate lawsuits in the Eastern District of Texas alleging infringement of the '797 Patent. The first such suit was against defendants Google, Inc., Samsung Telecommunications America, LLC, and HTC America, Inc.; the second was against defendant Blockbuster, L.L.C. Both actions were transferred to this District and the cases have been related for pre-trial purposes.

Defendants Google, Samsung, HTC, and Blockbuster collectively have filed a motion for summary judgment. The sole basis for that motion is that plaintiff's no-charge amendment renders the patent invalid because it lacks any written basis in either the parent or CIP application. Just as the BPAI found the no-charge limitation lacked written support for purposes of affixing a priority date, defendants urge that the lack of written support for that limitation in either the parent or CIP application renders the patent invalid under 35 U.S.C. § 112.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

The core dispute is whether the no-charge limitation as it exists in claims 1-5, 13, 16, 17, 20, and 23-26 is supported by the parent '448 application or the continuation-in-part '276 application. Having considered the evidence in the light most favorable to plaintiff, the Court concludes that there is no genuine dispute that neither the parent nor the CIP application supports this limitation. Accordingly,

4

defendants are entitled to summary judgment because these claims are invalid pursuant to 35 U.S.C. § 112.

It is well established that a patent is presumed valid, and "the burden of persuasion to the contrary is and remains on the party asserting invalidity." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573 (Fed.Cir.1985). To be valid, however, 35 U.S.C. § 112 requires that every patent contain a written description of the invention. The purpose of this requirement is to "ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001). "The test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad Pharms, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). While the written description requirement does not require that the original disclosure provide *in haec verba* support for the claimed subject matter at issue, *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1570 (Fed. Cir. 1996), the original disclosure must convey with reasonable clarity to those skilled in the art that the inventor was in possession of the invention. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

"When the applicant adds a claim or otherwise amends his specification after the original filing date . . .the new claims or other added material must find support in the original specification." *TurboCare*, 264 F.3d at 1118. "The fundamental inquiry is whether the material added by amendment was inherently contained in the original application." *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000). "[T]he test for sufficiency of support . . . is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'" *Vas-Cath,* 935 F.2d at 1563 (quoting *Ralston Purina Co.,* 772 F.2d at 1575).

5

### 1. 1995 Parent Application.

Defendants urge that deference to the BPAI's findings requires this Court now to invalidate the claims at issue in these lawsuits under 35 U.S.C § 112. In particular, the BPAI found that two claims containing the no-charge limitation lack support in the '448 application and therefore are not entitled to the 1995 priority date:

> the disclosure of the '448 parent application does not reasonably convey to one of ordinary skill in the art that the Appellant had possession of . . . "access to said software desired to be protected is being provided without causing a said [electronic commerce] operation being performed . . ."

Skaff Decl. Ex. F (BPAI opinion, 1/11/2011, at 35). While the BPAI's finding that the no-charge claims are not entitled to 1995 priority date is entitled to deference, see *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303-05 (Fed. Cir. 2008), it does not automatically follow that those claims must be invalidated for failing the § 112 written description requirement. That the BPAI found a lack of written description for the narrow purpose of determining a priority date does not excuse this Court from undertaking its own invalidity analysis on summary judgment. In defendants' view, every BPAI priority date dispute could result in an invalid patent. However, this cannot be squared with the Federal Circuit's narrow holding and reasoning as to why BPAI's priority date findings are entitled to deference. *See PowerOasis*, 522 F.3d at 1303-05.

The Court need not pause long on this issue, however, because in this case, the Court agrees with the BPAI's reasoning. Having conducted an independent review of the evidence, the Court concludes that the no-charge claims at issue here lack written support in the parent '448 application. Defendants challenge the validity of all claims allegedly infringed – claims 1-5, 13, 16, 17, 20, and 23-26 – because each contains or is dependent on a claim that contains the limitation that access to software through the AS sub-program (called the "ES Program" in the parent application) be provided "without causing a said [electronic commerce] operation being performed." *See*, *e.g.*, '797 Patent at 1:18-21; 10:41-45.

This limitation was added during the patent prosecution process to overcome a prior art objection. According to the amendment dated April 2, 2001, it was alleged that "Wiedemer (4,796,181)" prior art was "directed to a billing system for computer software" in which protected software was provided only after a billing operation took place. Skaff Decl. Ex. C (Docket No. 98-1

6

at 42). Plaintiff contended that in his system, "identity means/software/information" was used only "for enabling operation(s) for which rightful user(s) of the software desired to be protected." (emphasis original). *Id*. Thus plaintiff added the language, "wherein access to said software desire to be protected is being provided without causing said operation [an electronic commerce transaction] being performed," in order to explain that his invention does not require payment to access the protected software. *Id.* at 42-43. However, nowhere in the amendment does plaintiff explain its written basis, in either the parent or the CIP application.

The '448 parent application discusses payment only in the context of the encrypted identity information program (the "EI sub-program" as described in the '797 Patent) and only in the context of affirmatively causing a payment to be made. According to the parent application, "the central program causes the EI program to execute for providing an encrypted identity of the user" and "the central computer may use the encryption result, if it being correct, from the EI program as a user authori[z]ation for payment to be made, from a user account for obtaining network services of software products or the like." Skaff Decl. Ex. E, '448 Application, at 4-5. However, there is nothing in the original disclosure which conveys with reasonable clarity to one skilled in the art that the EI program would *not*, upon a correct encryption result, use the "authorization for payment to be made." Moreover, there is nothing in the original disclosure that would convey that access to the protected software though the AS sub-program would not – or would, for that matter – require a payment. Payment as discussed in the parent application is associated only with validating a user's identity in the EI sub-program, not with access or non-access to software in the AS sub-program. Accordingly, the Court finds that the amendment and the subsequent no-charge claims at issue here lack a written basis in the parent application.

### 2. The 1998 CIP Application.

Although the 1998 application purports to be a continuation-in-part of the parent, in fact, it contains mostly cosmetic changes from the 1995 application. *See* Decl. Ex. B (line-by-line comparison of the '448 application and '276 application). As such, it too fails to provide support sufficient to satisfy the written description requirement in 35 U.S.C. § 112.

7

Like the parent application, the '276 application discusses payment *only* in the context of the EI sub-program:

> The EI sub-program is for providing identity information (an encrypted identity) of its rightful owner for accessing a network central computer to obtain services or software products or alike in which a secure operation on a user account of that owner for payment therfor [sic] involved.
> . . . the central computer may use the encryption result received from the EI sub-program, if it being correct, as a user authorisation [sic] for payment to be made, from a user account for obtaining services or software products or the like.

Skaff Suppl. Decl. Ex. 1, at 1-2, 4. As with the parent application, the disclosure of payment using the EI sub-program does not support the limitation of not charging for access to the protected software using the AS sub-program. In fact, as in the parent application, there is no mention in the '276 application of charging or not charging with respect to the AS sub-program.

There is no support for the 2001 amendment that added the no-charge limitation to the claims at issue in this motion. As such, the Court finds that '797 Patent fails the written description requirement because its disclosure does not "describe an invention . . . in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention . . . with all its claimed limitations." *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

### 3. Implied Limitations.

Plaintiff does not dispute that the no-charge limitation is not expressly provided for in either the parent or the CIP application. Instead, plaintiff argues that the no-charge limitation is inherent or implicit in the embodiments disclosed in the specification. The Court disagrees.

In order for a disclosure to be inherent, "the missing descriptive matter must *necessarily* be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (emphasis added). The Federal Circuit has said that vague references or obvious variants of that which is disclosed in the specification are insufficient. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997). Moreover, "[w]hile the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification." *Id.* at 1572.

8

**United States District Court**
For the Northern District of California

    Here, none of the embodiments contains any discussion of whether an electronic commerce transaction takes place when providing access to protected software in the AS sub-program, much less explicitly disclose or inherently require not charging in connection with such access. The embodiments discussed in the specification illustrate different configurations of the system's three sub-programs: (1) the "EI sub-program" for providing encrypted identity information; (2) the "AC sub-program" for authenticating a computer; and (3) the "AS sub-program" for authorizing access or use of protected software. The first embodiment discloses that the three sub-programs are contained within the central program. In the second embodiment, the AC sub-program is removed and the AS sub-program and EI sub-program are separate programs on the same computer. The third embodiment discloses the same configuration as the second embodiment, except that the AS and EI sub-program use the same encryption algorithm, "thereby preventing the AS sub-program from unauthorised [sic] copying. '797 Patent at 2:22-24.

    Plaintiff contends that the first embodiment's initialization process of the AC sub-program "implicitly disclos[es]" that the "first embodiment requires no payment." Docket No. 101 at 10. The process involves the following steps: the EI sub-program is used to send identity information to the central computer; the AC sub-program then requests an encrypted command from the central computer; if the EI information is correct, the central computer will send an encrypted comment to the AC sub-program to begin initialization. This generic series of steps implies nothing, one way or the other, about not-charging for access. The inclusion of a no-charge limitation is not "necessary" to the invention; the invention would function just the same without the limitation. *See Tronzo*, 156 F.3d at 1159. The fact that payment is not mentioned here, without more, does not imply that payment is *necessarily* not required, particularly in the face of language elsewhere in the parent application disclosing that payment would or could be part of the EI sub-program process. *Id.*

    The second and third embodiments are similarly silent as to non-payment for software access in the AS sub-program. The second embodiment differs from the first embodiment's disclosure only in that the AS and EI sub-programs are independent programs. But the functioning of those sub-programs does not change; i.e., the EI sub-program continues to contemplate payment as part of its process and the AS sub-program makes no mention of payment. The third embodiment discloses an AS

9

1 sub-program with the same encryption algorithm as the EI sub-program. In plaintiff's view, this 2 embodiment therefore discloses "an EI sub-program equivalent but without its payment capability, i.e., 3 the AS sub-program." Docket No. 101 at 6. The Court disagrees. That these sub-programs are similar 4 or equivalent in terms of the encryption algorithm says nothing about whether they have similar or 5 different payment requirements or whether that requirement is "necessarily" part of the invention. 6 *Tronzo*, 156 F.3d at 1159. There is nothing inherent or implied in the algorithm equivalence to add any 7 support for the no- charge limitation at issue.

8 Relying on *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344 (Fed. Cir. 2012), plaintiff also 9 argues that because the no-charge limitation is a negative limitation that narrowed his claims, the 10 limitation is necessarily supported by the original application regardless of what the specification 11 discloses. Plaintiff's reliance on *Santarus* is misplaced. While *Santarus* instructs that patent applicants 12 are entitled to narrow their claims by amendment, the Federal Circuit still required support for the 13 narrowed limitation in the original specification. *Id.* at 1350-51. In *Santarus*, the negative limitation 14 at issue – the exclusion of the compound sucralfate – was adequately supported because the excluded 15 compound was already described in the specification as a less advantageous alternative and its 16 disadvantages were listed. *Id.* 1351. By contrast, here plaintiff's relevant applications and specification 17 fail to disclose anything supporting or discouraging a no-charge limitation. Accordingly, even 18 assuming the no-charge limitation was merely a narrowing limitation, there is no written support of the 19 kind the Federal Circuit approved in *Santarus* to support plaintiff's proposed narrowing.

20 In sum, the Court finds no support for the no-charge limitation in either the parent or CIP 21 application, and finds that the limitation is neither inherent in the specification nor is it a permissive 22 narrowing. As such, claims 1-5, 13, 16, 17, 20, and 23-26 are invalid for lack of written description. 23 *See Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000) (compliance with the written 24 description requirement requires that the original application describe the invention claimed in the patent 25 resulting from that application); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. 26 Cir. 1998) (invalidating amended claims not supported by the original application).

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment of invalidity based on lack of written description under 35 U.S.C. § 112 is GRANTED.

**IT IS SO ORDERED.**

Dated: December 11, 2013

SUSAN ILLSTON
United States District Judge